```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
DIANE GUZMAN, on behalf of
Robert Nelson,
                    Plaintiff,          05 Civ. 6086(WHP)(DFE)

         -against-                      REPORT AND RECOMMENDATION
                                        TO JUDGE PAULEY
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
------------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

    On June 30, 2005, plaintiff Diane Guzman (then proceeding with no attorney) filed this lawsuit challenging the denial of Supplemental Social Security benefits for her minor son. At my request, our Court's Pro Se Office sought a volunteer attorney to represent her and her son. James M. Baker, Esq. volunteered, and began work on the case on September 28, 2005. By letter dated April 28, 2006, the Government advised Mr. Baker that it wanted to seek a voluntary remand to conduct further administrative proceedings. Mr. Baker reviewed the record that had built up from December 2002 through April 2005. He decided to seek an even better result for the son (who was already 11 years old) -- a court order remanding solely for calculation of benefits. Mr. Baker turned to the law firm of Stroock & Stroock & Lavan LLP. Stroock volunteered to perform the bulk of the work, and did so commencing on June 30, 2006.

    On August 14, 2006, the Commissioner moved for reversal and remand for further evidentiary proceedings. The Commissioner conceded that the Administrative Law Judge failed to appreciate the severity of the son's lowest IQ score, and failed to request treatment notes from the treating psychiatrist, who had given a written diagnosis that the son had "Attention Deficit Hyperactivity Disorder, Combined Type."

    On September 13, 2006, Guzman's attorneys cross-moved for judgment on the pleadings, arguing that the record already contained compelling evidence of the son's disability, and that any further submissions from the treating psychiatrist would merely be amplification of facts already in the record.

    After receiving one more brief from each side, I held oral

argument on December 6, 2006.  My Report and Recommendation, *Guzman v. Barnhart*, 2006 U.S. DIST. LEXIS 94513 (S.D.N.Y. Dec. 29, 2006), recommended that Judge Pauley:  (a) grant plaintiff's cross-motion for judgment on the pleadings; (b) reverse the Commissioner's determination that the son is not disabled; and (c) remand the case to the Commissioner solely for the calculation of benefits.  The Commissioner did not object to my recommendation; by order dated February 5, 2007, Judge Pauley adopted it.

On March 19, 2007, plaintiff moved for attorneys' fees and expenses pursuant to the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. §2412.  The EAJA provides for "reasonable attorney fees" with a presumptive maximum hourly rate ($125 in 1996, plus cost-of-living increases; i.e., $160 in 2005 and $166 in 2006 and early 2007).  The EAJA is much less generous than other fee-shifting statutes, in which the "lodestar" is the prevailing hourly rate charged by lawyers in the community where the case is litigated.  Annexed to the supporting memorandum are a declaration of James L. Bernard with Stroock's time sheets and a declaration of Mr. Baker with his time sheets.  Mr. Baker seeks a fee of $4,276.00.  Stroock seeks a fee of $26,278.05, plus $6,005.95 in expenses.

On June 27, 2007, Assistant U.S. Attorney John E. Gura, Jr. served an 8-page memorandum.  He concedes that plaintiff is entitled to fees under the EAJA, and he writes that the "Commissioner certainly recognizes the high quality of the work performed by plaintiff's counsel."  (Def. Memo., p. 5.)  However, he notes that the administrative record contained only 116 pages, and he says this was "a straightforward disability case that did not involve any unusual issues."  (*Id.*, p. 1.)  He contends that Stroock is seeking payment for an excessive number of hours, particularly the 111.75 hours sought by Jennifer Arnett, Esq.  He submits that the total "fees and expenses awarded by the Court should not exceed $9,000.00."  (*Id.*, p. 4.)  He proposes "that it would be reasonable to award fees under the EAJA for 50 hours for attorneys' time (50 hours x $166/hour = $8,300) and another $700 for paralegal fees and expenses."  (*Ibid*, n. 3.)

Plaintiff served a reply memorandum on July 25, 2007.

## **DISCUSSION**

In deciding how much is a "reasonable" fee that should be paid by the Government, I have considered strong arguments on both sides.

When a non-attorney parent sues for SSI benefits on behalf of a minor child, judges in our Court frequently ask the Pro Se Office to seek a volunteer attorney. Mr. Baker volunteers so frequently that he cannot possibly do all of the work himself. He sometimes reaches out to large law firms with strong commitments to reduced-fee and no-fee work. At Stroock, Mr. Bernard frequently takes responsibility for such cases, but he cannot reasonably be expected to do all of the work himself. In the case at bar, Mr. Bernard brought in Ms. Arnett, a young litigator at his firm who had no prior experience in Social Security cases. With guidance from Mr. Baker (about 7 hours) and from Mr. Bernard (about 9 hours), Ms. Arnett prepared the briefs and presented the oral argument, and she did a fine job. Her own hours were very extensive. She would surely spend much less time if she were to volunteer for a future Social Security case, and our Court wants to encourage her to do so. Nevertheless, the issue remains: how much is a reasonable fee that the Government should be ordered to pay in the case at bar?

### **The qualifications and experience of the three attorneys**

James M. Baker graduated from Harvard Law School in 1973. After practicing in the private sector, he now specializes in handling SSI disability cases. He is a Staff Attorney at the Northern Manhattan Improvement Corporation, which is a not-for-profit legal service provider. Over the past 32 years, he has represented hundreds of individuals in disability proceedings. Significant decisions in which he was lead counsel include *Trichilo v. Secretary of Health & Human Servs.*, 823 F.2d 702 (2d Cir. 1987); *Quinones o/b/o Quinones v. Chater*, 117 F.3d 29 (2d Cir. 1997); *Curry v. Apfel*, 209 F.3d 117 (2d Cir. 2000); and *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78 (2d Cir. 2003).

James L. Bernard graduated from Fordham Law School in 1995, and has been at Stroock ever since, except for serving in 1997-98 as a law clerk to Judge Preska and in 1998-99 as a law clerk to Judge Hellerstein. He is currently a partner in the litigation department. He has been working on *pro bono* SSI cases for some six years, and has represented, or supervised the representation of, approximately sixteen SSI litigants.

Jennifer Arnett graduated from Columbia Law School in 2001. She clerked for Judge Louis H. Pollak of the Eastern District of Pennsylvania in 2001-02. She then worked as a Skadden Fellow at the ACLU Women's Rights Project, where she initiated a program focusing on employment rights of low-income immigrant women.

From 2004 to 2006, she was a litigation associate at Boies, Schiller & Flexner LLP.  In the summer of 2006, she began working at Stroock and began work on this case.

### Mr. Baker's hours

Mr. Baker's time sheets show as follows.  Before bringing in Stroock, he spent 3.9 hours in 2005 and 5.1 hours from 1/1/06 to 6/28/06.  He met with Ms. Guzman, he served the summons and complaint upon the Commissioner, he reviewed the administrative record, and he apparently tried to persuade AUSA Susan Baird to agree to a complete reversal and a remand for benefits.

He spent 14.6 hours from 6/29/06 to 12/29/06, including 1.5 hours for his initial meeting with Mr. Bernard and Ms. Arnett, 2.6 hours reviewing the draft of the main brief six days before it was served, 1.7 hours reviewing the draft of the reply brief some days before it was served, 1.5 hours meeting with Ms. Arnett to prepare her for her oral argument, and approximately 2.1 hours attending the 12/6/06 oral argument and participating in my 12/19/06 telephone conference.

He spent 2.1 hours in 2007, mostly in connection with this fee application.

At ¶3 and ¶5 of his declaration, Mr. Baker made two small arithmetical errors that virtually cancel each other out.  His total time was **25.7** hours.  This consisted of 3.9 hours in 2005, **19.7** hours in 2006, and 2.1 hours in 2007.  I find that his hours were reasonable, and that he is entitled to the EAJA's presumptive maximum:  $624.00 (3.9 hours x $160) for the work performed in 2005, and $3,618.80 (**21.8** hours x $166) for the work performed in 2006-07.  The total is **$4,242.80.**

### Mr. Bernard's hours

Mr. Bernard's time sheets show as follows.  From 6/30/06 to 12/31/06, he spent 12.0 hours.  This included 1.5 hours at the initial meeting with Mr. Baker and Ms. Arnett, 1.0 hour at a strategy meeting with Ms. Arnett and a summer associate, 2.5 hours editing Ms. Arnett's draft of the main brief, 1.6 hours editing her draft of the reply brief, about 2.0 hours meeting with her to prepare her for her oral argument, and about 1.5 hours attending the oral argument.  From 1/1/07 to 3/8/07, he spent 2.8 hours, mostly in connection with this fee application.

His total was 14.8 hours.  The last line of his time sheet mistakenly says 14.1, but the dollar total correctly reflects

14.8 hours x $166 = **$2,456.80**.  I find that amount to be
reasonable.

### Ms. Arnett's hours

Ms. Arnett's time sheets show that she spent 195.0 hours on
this case.  For purposes of this fee application, Mr. Bernard has
reduced her hours in two successive ways.  His declaration
explains at ¶16:

> ...  Ms. Arnett has a significant amount of
> litigation experience for a sixth-year associate,
> but this was her first SSI case.  As such, Ms. Arnett
> spent a fair amount of time familiarizing herself
> with the law and in preparing for oral argument.
> We have therefore reduced those hours that Ms. Arnett
> spent researching and preparing for oral argument,
> thereby dropping her hours from 195 to 149.  We then
> reduced Ms. Arnett's hours by a further 25%, bringing
> her hours down to 111.75.  ...

Accordingly, on each of Ms. Arnett's ten time sheets, I will
focus on the fourth column, which lists a single chunk of time
for each of the numerous days when she worked on this case.  The
bottom line of the fourth column gives the total of 111.75 hours;
hence Stroock requests $18,550.50 for Ms. Arnett's time.  Before
ruling on this request, I will discuss the case law.

### Case law on attorneys' fees in Social Security cases

On April 26, 2007, Mr. Bernard notified me of the April 17
opinion in *Healey v. Leavitt*, 485 F.3d 63, 70 n.5 (2d Cir. 2007).
Pointing to footnote 5, Mr. Bernard's cover letter said:  "[T]he
Second Circuit explained that attorneys' fees are available under
the Equal Access to Justice Act ... for the time it takes an
attorney to attain proficiency in areas covered by complex
federal regulatory schemes."  I find this to be an overstatement.
(It recurs in the 7/25/07 reply brief at p. 3.)  The Second
Circuit's holding reversed a district judge who said that the
specialized expertise of the plaintiffs' counsel entitled them to
an hourly rate in excess of the EAJA's presumptive maximum.
Footnote 5 was a dictum.  Moreover, it was a species of dictum
described by Judge Leval as follows:

> Another version is the contrary-to-fact
> hypothetical.  While explaining a ruling in
> favor of the winner, courts often add that
> *if the facts had been otherwise*, the court

>     would have ruled the other way. ... This is
>     a dangerous practice, which can easily engender
>     bad law.

Leval, *Judging under the Constitution: Dicta about Dicta*, 81 N.Y.U. Law Rev. 1249, 1265 (Oct. 2006) (with Judge Leval's emphasis). *Healey*'s footnote 5 said (with my emphasis):

>     It might take attorneys with**out** the
>     experience of those **here** time to familiarize
>     themselves with the Medicare statute and
>     the issues involved in this case, but again
>     this time may be compensated should they be
>     successful in litigating the case and therefore
>     **should not** operate as a disincentive for a
>     less experienced attorney to take on a
>     potentially meritorious case. *Cf., e.g.*,
>     *Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 841
>     (2d Cir. 1993) (noting that "[a] variety of
>     factors inform the court's determination ...,
>     including ... the lawyer's experience ...."

The phrase "should not" is ambiguous, and makes footnote 5 susceptible to two contrary readings. Mr. Bernard reads the footnote to say (in substance): "Therefore the extra time **must not** be left uncompensated, or there will be a disincentive." On the contrary, I read the footnote to say: "Therefore **it seems unlikely** that extra time will deter a less experienced attorney from taking a potentially meritorious case. She can apply for the Government to pay for some of her extra time; on the other hand, experience is a factor in deciding how big a fee is reasonable."

In *Hiciano v. Apfel*, 2002 WL 1148413, *2 (S.D.N.Y. May 29, 2002), Judge Cote wrote:

>     District courts in the Second Circuit have held
>     that routine social security benefit cases generally
>     require from twenty to forty hours of attorney time.
>     [Citations omitted.] Courts "have not hesitated,"
>     however, "to award attorney's fees well in excess of
>     the routine twenty to forty hours where the facts of
>     the specific case warrant[] such an award."
>     [Citations omitted.]

In *Hiciano*, there were two remands before the final remand for calculation of disability benefits. A law firm worked on the

case from 1997 to 2002, and sought $21,113.60 for 239.31 hours of work expended by 7 attorneys, 11 paralegals, and some others. Judge Cote awarded only $9,712.03 (for 25 of the partner's hours, 25 of the associates' hours, and 50 of the paralegals' hours). She explained that she was making this reduction "[i]n light of the unexceptional nature of Hiciano's case, but also taking into account that it was twice remanded to the Commissioner." *(Id.* at *3.)

### **Our case was not exceptionally long or novel**

In the case at bar, the administrative record was only 116 pages long. Before Stroock entered the case, the dispute had become quite narrow. In April 2006, the Commissioner essentially conceded to Mr. Baker that the denial of benefits was not adequately supported in the record; the Commissioner sought a second chance to build the record. The only issue was whether the existing record contained enough evidence to justify an outright reversal, with remand solely for calculation of benefits. Such reversals are rare when the Commissioner has not already received one remand to build the record. However, I cannot say that the case was novel or complicated, or that it required exceptional skill or time.

Pursuant to the briefing schedule, the Government's brief came first (on 8/14/06); it is somewhat less time-consuming to be in the role of "counterpuncher." A "routine" Social Security case often involves two rounds of briefing, first to a Magistrate Judge and then to a District Judge. Here, there was only one round; after my opinion, the Commissioner threw in the towel.

### **My analysis of Ms. Arnett's hours**

Taking all of the factors into account, and going through Ms. Arnett's time sheets line by line, I find that a fair and reasonable award (at $166 per hour) should be limited to the following hours:

| **Date** | **Hours** | **Description** |
|---|---|---|
| 6/30/06 | 1.58 | Meeting with Bernard and Baker. |
| 7/05/06 | 2.55 | Reading administrative record. |
| 7/06/06 | 1.00 | Meeting with Bernard and summer associate. |
| 7/10/06 | 1.13 | Create digest of administrative record. |

-7-

| | | |
|---|---|---|
| 8/17/06 | 1.13 | Review defendant's brief [15 pages]. |
| 8/18/06 | 1.50 | Research re standard for reversal. |
| 8/26/06 | 1.50 | Research re ADHD as a disability; review regs for childhood disability. |
| 8/28/06 | 4.50 | Develop outline; drafting brief. |
| 8/29/06 | 6.30 | Drafting brief. |
| 8/30/06 | 4.88 | Drafting brief. |
| 8/31/06 | 3.30 | Editing brief. |
| 9/05/06 | 2.70 | Editing brief (after Bernard's edits). |
| 9/08/06 | 2.08 | Editing brief (after Baker's edits). [The 9/13 brief was 23 pages.] |
| 10/09/06 | 1.58 | Read government reply brief [8 pages]. |
| 10/10/06 | 2.70 | Drafting response brief. |
| 10/11/06 | 1.50 | Drafting response brief. |
| 10/13/06 | 2.18 | Drafting response brief. |
| 10/15/06 | 1.20 | Drafting response brief. |
| 10/17/06 | 3.00 | Revising response brief (after Bernard's and Baker's edits). [The 10/18 response brief was 10 pages.] |
| 12/01/06 | 2.25 | Preparing for oral argument. |
| 12/05/06 | 3.00 | Preparing for oral argument. |
| 12/06/06 | 5.03 | Preparing for oral argument (3.53); the oral argument itself (1.50). |
| 12/07/06 | 3.00 | Research re reversal without 2 hearings. |
| 12/12/06 | 0.38 | Sending letter to MJ Eaton with 8 cases. |
| 12/19/06 | 0.75 | Telephone conference with MJ Eaton. |

|  |  |  |
|---|---|---|
| 3/06/07 | 3.90 | Drafting motion seeking fees. |
| 3/07/07 | 3.98 | Drafting motion seeking fees. |
| 3/08/07 | <u>1.80</u> | Drafting motion seeking fees. |

**70.40   TOTAL HOURS ALLOWED FOR MS. ARNETT**

In my view, the maximum reasonable award for Ms. Arnett's time is 70.40 x $166 = **$11,686.40**.

### The hours spent by one summer associate and five paralegals

Mr. Bernard's declaration has also submitted time sheets for one summer associate and five paralegals. Stroock seeks $1,263.50 for the summer associate (13.30 hours x $95), who read and summarized case law (long before the Government submitted the first brief).

Stroock seeks $4,007.25 for the paralegals (41.10 hours x $97.50). Of this, approximately $2,700 was for cite checking and approximately $1,300 was for preparing binders for Ms. Arnett to use during the oral argument.

I find it unreasonable to require the Government to pay for any of the time of those six persons.

To summarize, I recommend that Judge Pauley require the Government to pay fees of $4,242.80 to Mr. Baker and total fees of $14,143.20 to Stroock.

### Since plaintiff was granted *in forma pauperis* status, the Government is immune from paying any "costs" but may be required to pay "expenses" if they are reasonable.

Mr. Bernard's declaration annexed the time sheets and then pages 18 through 25, which give a chronological listing of Stroock's expenses totaling $6,005.95. About $4,000 of these were for computerized legal research and cite-checking.

AUSA Gura points to *Maida v. Callahan,* 148 F.3d 190, 193 (2d Cir. 1998), which said:

> [W]hile the EAJA generally waives the United States's immunity from costs and a successful claimant

may recover costs against the government in a social
security action, it does so "*[e]xcept as otherwise
specifically provided by statute*," 28 U.S.C. § 2412(a)
(emphasis added), and the *in forma pauperis* statute, 28
U.S.C. § 1915(f)(1), bars an award of costs against the
government where a litigant proceeds under that
statute.

Ms. Guzman did proceed under the *in forma pauperis* statute. However, in similar cases, three judges in our District have required the Government to pay for "expenses," as distinguished from "costs" that are listed in 28 U.S.C. § 1920. *Hiciano*, 2002 WL 1148413, at *4-5 (Cote, J.); *Adorno v. Barnhart*, 2003 WL 21638208, at *3 (S.D.N.Y. July 11, 2003) (Baer, J.); *Torres v. Barnhart*, 2007 WL 1810238, at *15-17 (S.D.N.Y. June 25, 2007) (Peck, M.J.). This has led to odd results: the Government is immunized from paying for "costs" such as "transcript necessarily obtained for use in the case" and "Process Service & Calendar Watch," and yet the Government may be required to pay for "expenses" such as computer research, provided the expenses were reasonable. *Torres*, at *16-17. In both *Hiciano* and *Torres,* the awards for computer research were less than $100. I have yet to see an EAJA case where a law firm represented an *in forma pauperis* plaintiff and the Government was required to pay for any significant amount of computer research.

In Stroock's computerized list of expenses, page 19 contains three consecutive entries as follows:

| Date | Name | Amount | Service |
|---|---|---|---|
| 9/7/06 | Mariano, Christine | $1,484.14 | Westlaw Duration 2:49:08 |
| 9/8/06 | Sigler, Benjamin J. | $120.27 | Westlaw Duration 0:22:32 |
| 9/8/06 | DePinto, Lauren M. | $271.17 | Westlaw Duration 0:44:58 |

I have the time sheets for those three paralegals. Mr. Sigler's time sheet shows that he was cite-checking the brief on 9/8/06. But the time sheets for Ms. Mariano and Ms. DePinto do not show them doing any work on 9/7/06 or 9/8/06, or doing any work at any time that would suggest the use of Westlaw. I recommend that the Government not be required to pay for any Westlaw or Lexis/Nexis expenses incurred by any of the paralegals or by the summer associate; I am not convinced that they were using the computer in a necessary and efficient manner. On the other hand, I recommend that the Government be required to pay for some of the

-10-

computer research expenses incurred by Ms. Arnett, namely:

$694.40 that she incurred for Westlaw from 8/17/06
 to 8/31/06 after receiving the Government's
 first brief, which probably made her research
 more focused and efficient.

$187.82 that she incurred for Westlaw and Lexis/Nexis
 from 10/9/06 to 10/18/06.

$296.78 that she incurred for Westlaw on 12/7/06, which
 I am quite sure found the 8 cases she sent to
 me on 12/12/06.

Those total **$1,179.00**. I would not require the Government to pay for any of the other expenses.

### CONCLUSION AND RECOMMENDATION

For the reasons stated above, I recommend that Judge Pauley require the Government to pay:

To James M. Baker (or his designee): **$4,242.80** as an attorney's fee.

To Stroock & Stroock & Lavan LLP: **$14,143.20** as attorneys' fees, and **$1,179.00** for expenses.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy, (i.e. **no later than December 4, 2007**) by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. William H. Pauley, III, U.S.D.J. at Room 2210, 500 Pearl Street, New York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street. Failure to file objections within 10 business days will preclude appellate review. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(e). Any request for an extension of time must be addressed to Judge Pauley.

*Douglas F. Eaton*
DOUGLAS F. EATON
United States Magistrate Judge

-11-

Dated:   New York, New York
         November 16, 2007

Copies of this Report and Recommendation are being sent to:

Jennifer Arnett, Esq.
James L. Bernard, Esq.
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982
(also by fax to 212-806-6006)

James M. Baker, Esq.
Northern Manhattan
   Improvement Corporation
841 Broadway, Suite 605
New York, NY 10003

John E. Gura, Jr., Esq.
Assistant U.S. Attorney
86 Chambers Street
New York, NY 10007
(also by fax to 212-637-2750)

Hon. William H. Pauley, III